| | |
|---|---|
| BRUCE A. DIEHL and <br> JULIANNE M. DIEHL, <br><br> Plaintiffs, <br><br> v. <br><br> RARITY BAY COMMUNITY <br> ASSOCIATION, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 3:12-CV-499 <br> )      (VARLAN/GUYTON) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendant Sterling P. Owen, IV's, Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 3],[1] the Motion by Rarity Defendants and Defendant James Glasgow to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 11],[2] Plaintiffs' Request for Judicial Notice in Opposition to Defendant Sterling P. Owen's Motion to Dismiss [Doc. 15],[3] and Plaintiffs' Motion for Leave to File a Second Amended Complaint [Doc. 18].[4]

---

[1] Plaintiffs filed a response [Doc. 16], and defendant replied [Doc. 17].

[2] Plaintiffs filed a response [Doc. 20], and defendants replied [Doc. 26].

[3] No response was filed, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2.

[4] Defendant Sterling P. Owen IV filed a response [Doc. 21], as did defendants Rarity Bay Community Association, Inc., Carolyn B. Beatty, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, Gary F. Consorto, Toni A. Gallelli, Raymond James Smith, and James Glasgow [Doc. 22], and plaintiffs replied [Docs. 23, 27].

After careful consideration of the motions and the relevant law, the Court will grant Plaintiffs' Motion for Leave to File a Second Amended Complaint [Doc. 18], and deny as moot Defendant Sterling P. Owen, IV's, Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 3], the Motion by Rarity Defendants and Defendant James Glasgow to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 11], and Plaintiffs' Request for Judicial Notice in Opposition to Defendant Sterling P. Owen's Motion to Dismiss [Doc. 15].

## I. Background

On August 23, 2013, plaintiffs, who are residents of the Rarity Bay community, commenced this action in state court, asserting claims for slander of title and breach of fiduciary duty against James Glasgow ("Glasgow"), Rarity Bay Community Association, Inc., Carolyn B. Beatty, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, Gary F. Consorto, Toni A. Gallelli, and Raymond James Smith (together, the "Rarity Bay Defendants"), and Sterling P. Owen (the "Receiver").[5]  On September 21, 2012, the Receiver removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(3), which provides that a civil action commenced in a state court is against "[a]ny officer of the courts of the United States, for or relating to any Act under color of office or in the performance of his duties" may be removed to federal court.  The Receiver also filed a motion to dismiss [Doc. 3], as did the Rarity Defendants and Glasgow [Doc. 11].

---

[5] Plaintiff amended the complaint on September 14, 2012 [Doc. 1-3].

2

In response to the motions to dismiss, plaintiffs filed a motion to amend the complaint [Doc. 18]. Plaintiffs assert that the proposed amended complaint "provides much more specificity regarding the facts averred and the causes of action alleged against each Defendant in the Amended Complaint" and substantiates "the factual allegations . . . with twenty-eight (28) exhibits in addition to those that were included with the Amended Complaint" [Doc. 18 (emphasis omitted)].

In the proposed amended complaint plaintiffs allege that they purchased a parcel of land in Monroe County, Tennessee on September 6, 1996, known as Lot 172, Rarity Bay Subdivision, Phase 1, Section 3 (the "Property") [Doc. 18-1 ¶ 24]. Further, they allege that the Warranty Deed for the Property, which is recorded in the Monroe County Register's Office, provides that the Property "is 'subject to all easements restrictions and covenants of record, including but not limited to Declaration of Covenants, Conditions and Restrictions of record in Miscellaneous Book 91, Page 58, Monroe County Register of Deeds'" (the "Phase I Restrictions"), which in turn provides that "additional phases of land may be brought into the development and such additions shall be made by filing 'of record a Supplemental Declaration with respect to the additional property'" [*Id.* ¶¶ 25, 26 (emphasis omitted)]. The Supplemental Declaration, however, cannot "revoke, modify or add to the covenants, conditions, and restrictions established by [the Phase I Restrictions] or any Supplemental Declaration" [*Id.* ¶ 26 (internal quotation marks omitted)]. The Phase I Restrictions additionally provide that "the covenants run with the land and are binding on all parties and all persons claiming under them for twenty-five (25) years from

3

the recording date of the covenants, after which time said covenants shall be automatically extended for successive ten (10) years unless an instrument signed by two thirds (2/3rds) of the then owners of the lots have [sic] been recorded, agreeing to change said covenants in whole or in part" [*Id.* ¶ 27 (emphasis and internal quotation marks omitted)].

Two years later, on or about September 28, 1998, plaintiffs aver that three existing homeowners associations were merged into one association known as the Rarity Bay Community Association (the "Association") [*Id.* ¶ 28]. According to plaintiffs, on or about the same date, "the Association improperly adopted and/or approved invalid By-Laws" [*Id.* ¶¶ 29, 30].

Plaintiffs allege that on October 20, 1998, a Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay (the "Master Declaration") was recorded in the Monroe County Register's Office "under the supervision of Developer/Declarant Michael L. Ross and Defendant Carolyn D. Beatty" [*Id.* ¶ 31]. Plaintiffs allege that the Master Declaration was not presented to the Association for review and approval [*Id.* ¶ 32]. It provides that "while different phases or subsections of phases may be subject to differing declarations, all declarations will be administered by a single property owners association" [*Id.* ¶ 34 (alteration and emphasis omitted)]. Plaintiffs maintain that the Master Declaration does not apply to their property given the language set forth in the Phase I Restrictions [*Id.* ¶ 36].

In or around fall 2003, plaintiffs displayed a "for-sale" sign in the window of their home [*Id.* ¶ 37]. Plaintiffs allege that on August 17, 2004, the Association notified plaintiffs that the placement of the sign violated the Master Declaration and that a $50 per day fine would be assessed until the sign was removed [*Id.* ¶ 38]. Thereafter, and continuing through 2011, plaintiffs state they "sent numerous communications, with proof, to the Association stating that the Phase I Restrictions were the only restrictions which applied to the Property" and that "the Association did not have the authority to assess a monetary fine against them for the display of the sign" [*Id.* ¶ 41].

According to plaintiffs, in September 2008, defendant Carolyn D. Beatty responded to a letter dated October 14, 2004, acknowledging that the Phase I Restrictions were the only restrictions applicable to the Property [*Id.* ¶¶ 42, 43]. Nevertheless, plaintiffs received a notice of non-compliance from the Association dated August 19, 2009, asserting plaintiffs were in violation of the Master Declaration [*Id.* ¶ 43]. A notice dated September 16, 2009, threatened the imposition of a monetary fine, and the Association assessed fines against plaintiffs beginning in October 2009 [*Id.* ¶¶ 43, 44]. The Association assessed a fine again on or around April 30, 2010 [*Id.* ¶ 45]. Plaintiffs assert that in assessing the fines, the Association threatened to file a lien against the Property for noncompliance with the Master Declaration and Association By-Laws [*Id.* ¶ 46]. The Association did not assess fines against other homeowners who displayed signs on their properties [*Id.* ¶ 48].

On March 15, 2010, plaintiffs assert that a special meeting was held and the Directors of the Association exceeded the scope of their authority by recommending that Rarity Management Company, LLC amend the Master Declaration and the By-Laws to permit an increase of $150 for the General Assessment for 2010 to make up for a shortfall in cash [*Id.* ¶¶ 51–56]. On or about May 18, 2010, Rarity Bay Management, LLC filed an amendment to the Master Declaration and the By-Laws to increase the General Assessment for all Rarity Bay homeowners for 2010 by $150 [*Id.* ¶ 57]. Plaintiffs allege that they were assessed a $150 increase in their General Assessment for 2010 but that this increase is not applicable to their property because their property is subject only to the Phase I Restrictions, which provide that the yearly general assessment may be increased only by 5% per year and their general assessment for 2009 was only $393 [*Id.* ¶¶ 58, 59]. According to plaintiffs, they "repeatedly communicated to the Association that the Property is not subject to the increased General Assessment," but the Association ignored their communications and continued to demand that plaintiffs pay the increase [*Id.* ¶ 60]. Also, "[s]ince 2010, the Association has continued to assess the invalid increase in the General Assessment on Plaintiffs and all residences subject to the Phase I Restrictions" [*Id.* ¶ 62]. Plaintiffs received a statement showing the levy of the assessment on their property on September 1, 2011, and on or around May 31, 2012, and October 22, 2012, plaintiffs received a statements showing the levy of the assessment on their property for 2012 [*Id.*].

Plaintiffs assert that on or around September 11, 2012, they received a notice that they owed the Association for the fines and the $150 General Assessments for 2010 through 2012, and that if the account was not paid in full by October 22, 2012, that they would be ineligible to vote for new Board of Directors at the Association's Annual Meeting [*Id.* ¶¶ 63, 64].

According to plaintiffs, Sterling P. Owen was appointed as a receiver in the matter of *Stooksbury v. Ross*, Case No. 3:09-CV-498, and ordered to take "possession of all assets . . . including . . . all interest in real property, including but not limited to all membership fees, dues and any other payments due or receivable on account of any interest in any real estate association," which includes the Association [*Id.* ¶¶ 66, 67]. In addition, the Receiver was ordered to "not only control the Defendants' assets in a manner best suited to preserve those assets, but he is to 'evaluate and operate the business of each Defendant . . . including . . . any property owners' association . . . to avoid waste or dissipation and to protect the value of each business entity and each association'" [*Id.* ¶ 68].

Plaintiffs state that the Receiver appointed himself as Chairman and President of the Board of Directors for the Association on July 18, 2012, and has actively managed the Association since that time [*Id.* ¶ 69]. According to plaintiffs, several homeowners attempted to communicate with the Receiver about the invalidity of the $150 increase in the yearly General Assessment, but he "failed to take any action to investigate or address" and "continued to pursue the collection of the improper $150.00 increase . . .

from Plaintiffs and other homeowners who are subject only to the Phase I Restrictions" [*Id.* ¶¶ 70, 71]. Plaintiffs allege that the Receiver is thus "perpetuating a fraudulent scheme to improperly collect revenue," only furthering the wrongdoing of Michael Ross and turning the "wrongfully collected money . . . into an asset for Plaintiff Stooksbury" [*Id.* ¶ 72].

Plaintiffs further allege that since July 18, 2012, the Receiver has been informed that plaintiffs have been "defrauded because Association funds have been misappropriated by [defendants] . . . to maintain common properties that the Association simply does not own," including maintenance of a fence and trees along Rarity Bay Parkway, maintenance of entrance fountains, and a dog park [*Id.* ¶¶ 73, 76, 77, 78]. Plaintiffs aver that the Receiver has failed to investigate the misappropriation of these funds [*Id.* ¶ 74].

Also since July 18, 2012, plaintiffs allege that the Receiver has "unequally enforced liens against Rarity Bay homeowners" in that he has failed to pursue liens against some Rarity Bay homeowners for failure to pay the $150 General Assessment and the lien on plaintiffs' property "despite having knowledge that it is improper" [*Id.* ¶¶ 80–83].

On the basis of these allegations, plaintiffs assert a claim for slander of title against defendants Carolyn D. Beatty, the Association, James Glasgow, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, and Gary F. Consorto (Count I); a claim for breach of

8

fiduciary duty against all defendants (Count II); a claim for aiding and abetting breach of fiduciary duty against all defendants (Count III); a claim for conversion against the Receiver (Count IV); and a claim for civil conspiracy against defendants Carolyn D. Beatty, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, Gary F. Consorto, Toni A. Gallelli, and Raymond James Smith (Count V). They seek $60,000 in compensatory damages, special damages for expenses incurred, punitive damages, and court costs.

## II. Analysis of Motion to Amend[6]

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408

---

[6] While the motions to dismiss were filed before the motion to amend, motions to amend shall be freely granted. Fed. R. Civ. P. 15. Moreover, granting a motion to dismiss before addressing a pending motion to amend can be an abuse of discretion. *Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991).

9

F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a

plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### A. Proposed Claims Against the Receiver

The proposed amended complaint sets forth the following claims against the Receiver: conversion (Count IV), breach of fiduciary duty (Count II), and aiding and abetting breach of fiduciary duty (Count III) [*See* Doc. 18-1].

#### 1. Conversion Claim (Count IV)

Plaintiffs' conversion claim asserts that the Receiver wrongfully pursued the collection of the $150 increase from plaintiffs and other homeowners who are subject only to the Phase I Restrictions and converted or identified those funds as an asset for the benefit of the plaintiff in *Stooksbury* [Doc. 18-1 ¶¶ 125–128]. Plaintiffs further assert that the Receiver converted Association funds in that he approved of the misappropriation of funds to pay for the property taxes of a dog park, even though the Association does not own the dog park [*Id.*]. The Receiver argues that the conversion claim is futile because the Receiver is entitled to absolute immunity.

"Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 349, 373 (5th Cir. 1995). The Sixth Circuit has specifically said that a receiver is entitled to judicial immunity so long as he does "not act

11

outside of his authority under court order or maliciously or corruptly." *Plassman v. City of Wauseon*, 85 F.3d 629, 1996 WL 254662, at *7 (6th Cir. May 14, 1996) (unpublished).

The order appointing the Receiver provides that the Receiver is:

> . . . To evaluate and operate the business of each Defendant corporation, partnership or limited liability company, and each business entity or association owned and/or controlled by each Defendant as Mr. Owen deems necessary, including but not limited to any property owners' association or entity operating or controlling any asset, real property or association with any interest in real property, *to avoid waste or dissipation and to protect and to maximize the value of each business entity and each association* pending sale or other disposition upon approval of this Court . . . .

[Doc. 586 in Case No. 3:09-CV-498 (emphasis added)].[7] Accepting plaintiffs' allegations as true, the Receiver was knowingly wasting assets of the Association. If true, such conduct would fall outside the scope of his authority as a receiver because he is to "avoid waste or dissipation and . . . protect and . . . maximize the value of [the Association]" [*Id.*]. Accordingly, the Court finds that the Receiver is not entitled to immunity at this time and that plaintiffs' conversion claim is therefore not futile.

### 2. Breach of Fiduciary Duty Claims (Counts II and III)

Plaintiffs allege that the Receiver is a principal agent of the Association, and as such owed a fiduciary duty to the Association and its members [Doc. 18-1 ¶¶ 102, 103]. Plaintiffs further allege that as a receiver, the Receiver owed a fiduciary duty to the members of the Association because he was ordered to protect, investigate, preserve, and

---

[7] The Court takes judicial notice of this record, which it may consider in connection with a motion to dismiss. *New England Health Care Emp. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999).

12

control assets subject to the receivership [*Id.* ¶ 104]. According to plaintiffs, the Receiver breached his fiduciary duty by agreeing to the levy of the assessment against plaintiffs and others subject only to the Phase I Restrictions, by preventing plaintiffs from exercising their right to vote in the election for new Board members, by failing to investigate the validity of the assessment despite having knowledge that the assessment was improper, and by converting improperly collected assessments into an asset for the receivership [*Id.* ¶¶ 107–12]. Plaintiffs also claim the Receiver breached his fiduciary duty by approving the allocation of Association funds to maintain properties not owned by the Association and by treating homeowners who have had monetary fines assessed against them and who have failed to pay outstanding assessments differently from plaintiffs [*Id.* ¶¶ 113–14, 116–18].

The Receiver asserts that plaintiffs' breach of fiduciary duty claims are futile because they are barred by the one-year statute of limitations set forth in Tenn. Code Ann. § 48-18-601. The parties do not dispute that the applicable statute of limitations for a breach of fiduciary duty claim is one year, although they cite different provisions of the Tennessee Code. *See* Tenn. Code Ann. §§ 48-18-601, 48-58-601. Regardless, the provisions cited by the parties mirror one another and provide:

> Any action alleging breach of fiduciary duties by directors or officers, including alleged violations of the standards established in § 48-58-301, § 48-58-302 or § 48-58-403, must be brought within one (1) year from the date of such breach or violation. In the event the alleged breach or violation is not discovered nor reasonably should have been discovered within that one-year period, the period of limitation shall be one (1) year from the date such was discovered

13

or reasonably should have been discovered. In no event shall any such action be brought more than three (3) years after the date on which the breach or violation occurred, except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after the alleged breach or violation is, or should have been, discovered.

Tenn. Code Ann. § 48-58-601.[8] *See* also Tenn. Code Ann. § 48-18-601.

The only argument the Receiver makes with respect to the statute of limitations is that the claim for breach of fiduciary duty is predicated upon the allegedly invalid 2010 General Assessment that was approved by the Association on May 18, 2010, meaning any claim had to have been brought on or before May 18, 2011. The Court is perplexed, however, in determining how the Receiver could have breached a duty before he was appointed as the receiver in *Stooksbury* on July 18, 2012. Moreover, the case law cited by the Receiver, *Reid v. Baker*, 499 F. App'x 520 (6th Cir. 2012), does not aid his argument because plaintiffs have not admitted facts in the complaint establishing that the statute has run; rather, plaintiffs allege that certain conduct underlying the breach of fiduciary duty claim took place within the statute of limitations period [*See*, *e.g.*, Doc. 18-1 ¶¶ 70, 71, 72, 75, 76, 77, 78, 79, 80, 82, 83, 84].

Accordingly, for the reasons discussed, the Court finds that plaintiffs' breach of fiduciary duty claims with respect to the Receiver are not futile.

---

[8] The Court cites Tenn. Code Ann. § 48-58-601 because it applies to nonprofit corporations, and plaintiffs identify the Association as a "non-profit corporation organized and existing under the laws of the State of Tennessee" [Doc. 18-1 ¶ 11].

14

### B. Proposed Claims Against the Rarity Defendants and Glasgow

The Rarity Defendants and defendant Glasgow[9] filed a collective response to the motion to amend asserting that each claim asserted against them is futile.

#### 1. Slander of Title Claim (Count I)

Plaintiffs allege that on October 19, 2010, defendant Carolyn D. Beatty, acting on behalf of the Association, sent plaintiffs a notice of intention to record a lien against the Property as a result of their failure to pay the 2011 General Assessment and the fines assessed for failure to remove the for-sale sign, and then, on or about August 26, 2011, executed a Notice of Lien against the Property for $21,141.20, which was recorded in the Register's Office for Monroe County, Tennessee [Doc. 18-1 ¶¶ 86, 87]. Plaintiffs further allege that defendant James Glasgow caused the Notice of Lien to be published, communicated, and disseminated via electronic communication in or around September 2011 to one or more members of the Association [*Id.* ¶ 89]. According to plaintiffs, this Notice of Lien was false because it stated that the Master Declaration gave the Association authority to impose a lien against the Property and defendants acted with malice in publishing it because they knew the Master Declaration did not apply with respect to the Property [*Id.* ¶¶ 90–93, 97]. As a result, plaintiffs state the title to the Property has been slandered and the marketability of the Property has been impaired in that the fair market value has been diminished [*Id.* ¶¶ 95–96].

---

[9] For purposes of this section of this memorandum opinion and order, the Court will refer to the Rarity Defendants and defendant Glasgow together as "defendants."

Defendants argue that the slander of title claim is futile because it is time barred. More particularly, they assert that the Master Declaration applies to the Property because it was approved and filed with the register of deeds approximately fourteen years ago and plaintiffs did not challenge its application within the six-year statute of limitations period established by *Grand Valley Lakes Property Owners Association, Inc. v. Burrow*, 376 S.W.3d 66 (Tenn. Ct. App. 2011). Plaintiffs state that the slander of title claim was brought in response to defendants' wrongful and malicious publication of an improper lien that was recorded against the Property on August 26, 2011, not to challenge the validity of the Master Declaration.

Application of the Master Declaration to the Property is an issue in this case and it seems that the Court may be called upon to determine whether the Master Declaration applies to the Property in determining the merits of plaintiffs' claim, but defendants point to no case law that suggests the slander of title claim, which is based upon actions that took place within one year of filing the complaint, is barred because plaintiffs did not challenge the application of the Master Declaration to their Property within the six-years after its adoption. The Court therefore declines to find that the slander of title claim is futile because it is time barred.

### 2. Breach of Fiduciary Duty Claims (Counts II and III)

In the proposed amended complaint, plaintiffs allege that defendants Carolyn D. Beatty, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, Gary F. Consorto, Toni A. Gallelli, and

Raymond James Smith are principle agents of the Association and as such "occupied or occupy a fiduciary relation towards the Association and its members" [Doc. 18-1 ¶¶ 102, 103]. Plaintiffs further allege that these defendants breached this duty by agreeing to the levy of the assessment against plaintiffs and others subject only to the Phase I Restrictions and by preventing plaintiffs from exercising their right to vote in the election for new Board members [*Id.* ¶¶ 107–10]. Plaintiffs also claim these defendants breached their fiduciary duty by approving the allocation of Association funds to maintain properties not owned by the Association, by publishing the Notice of Lien, and by treating homeowners who have had monetary fines assessed against them and who have failed to pay outstanding assessments differently from plaintiffs [*Id.* ¶¶ 114, 116–18].

Like the Receiver, defendants argue that the breach of fiduciary duty claims are futile because they are predicated on the allegedly invalid 2010 General Assessment that was filed on or about May 18, 2010, and claims for breach of fiduciary duty must be brought within one year of the alleged breach pursuant to Tenn. Code Ann. § 48-16-601.[10] The Court, however, finds that the breach of fiduciary duty claim is predicated, not upon the General Assessment that occurred in 2010, but upon other conduct that occurred within the applicable statute of limitations period, including, for example, that the Association misappropriated funds on or about October 2012, precluded plaintiffs from voting for Board members in September 2012, and published the Notice of Lien in

---

[10] While this provision does not exist, the Court presumes that defendants meant to refer to one of the statutes cited by the Receiver and plaintiffs, either Tenn. Code Ann. § 48-18-601 or Tenn. Code Ann. § 48-58-601.

August 2012 [*See*, *e.g.*, Doc. 18-1 ¶¶ 62, 63, 80]. For this reason, the Court further finds that *Reid v. Baker*, 499 F. App'x 520 (6th Cir. 2012), is inapposite.

### 3.     Civil Conspiracy Claim (Count V)

Plaintiffs' proposed amended complaint alleges that "there was a common design between Defendants Carolyn D. Beatty, Duane Baumert, Jack A. Wright, Florence (Rita) Lemanski, Michael Szilvagyi, Rebecca Rose Ross Jordan, Gregory P. Baker, Gary F. Consorto, Toni A. Gallelli, and Raymond James Smith to levy the improper $150.00 increase in the yearly general assessment on all members of the Association to make up for the unauthorized use of funds by Developer/Declarant Michael L. Ross" [Doc. 18-1 ¶ 130]. They further allege that a lien was placed on the Property and that they are being prevented from voting for new Association Board members because they have refused to pay the assessment since 2010 [*Id.* ¶ 132]. Defendants argue this claim "is futile because it relies on the assumption that the Master Declaration does not apply to the Plaintiffs' property" and "the Plaintiffs are time-barred to challenge the Master Declaration" [Doc. 22].

The Tennessee statute of limitations for civil conspiracy is one year. Tenn. Code Ann. § 28-3-104. *See Braswell v. Carothers*, 863 S.W.2d 722, 725 (Tenn. Ct. App. 1993) (statute of limitations for tort of civil conspiracy is one year). A cause of action for civil conspiracy accrues when an overt act in furtherance of an alleged conspiracy causes damage to the complainant. *Withrow v. First Tenn. Bank Nat'l Ass'n*, No. 3:04-CV-546, 2006 WL 2981295, at *3 (E.D. Tenn. Oct. 16, 2006) (citing *Budget Rent-A-Car v. Car*

18

*Servs.*, 469 S.W.2d 360, 362 (Tenn. 1971)). Plaintiffs assert that they were damaged when the lien was placed on the property, which occurred on August 26, 2011. Because this date is less than one year before the filing of the original complaint on August 23, 2012, the Court declines to find the civil conspiracy claim is futile because it is time barred.

For all these reasons, the Court will grant the motion to amend. The Clerk will be directed to file the proposed amend complaint and related exhibits [Docs. 18-1 through 18-32] upon entry of this memorandum opinion and order.

### III. Analysis of the Motions to Dismiss and Request for Judicial Notice

Because the Court has found that the motion to amend is not futile, the Court will deny defendants' previously filed motions to dismiss [Docs. 3, 11] as moot. The Court will also deny as moot the request of plaintiffs that the Court take judicial notice with respect to matters relating to the Receiver's motion to dismiss [Doc. 15]. *See Pethtel v. Wash. Cnty. Sheriff's Office*, No. 2:06-799, 2007 WL 2359765, at *2 (S.D. Ohio Aug. 16, 2007) ("[B]ecause an amended complaint supersedes the original complaint, the filing of an amended complaint normally moots a motion to dismiss the original complaint.").

### IV. Conclusion

For the reasons explained, the Court hereby **GRANTS** Plaintiffs' Motion for Leave to File a Second Amended Complaint [Doc. 18]. The Clerk is **DIRECTED** to file the proposed amend complaint and related exhibits [Docs. 18-1 through 18-32] upon entry of this memorandum opinion and order. In light of the Court's ruling on plaintiff's

19

motion to amend, Defendant Sterling P. Owen, IV's, Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 3], the Motion by Rarity Defendants and Defendant James Glasgow to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [Doc. 11], and Plaintiffs' Request for Judicial Notice in Opposition to Defendant Sterling P. Owen's Motion to Dismiss [Doc. 15] are hereby **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE